**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | | |
|---|---|---|
| **RODGER A. WEIGEL** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **3:05-CV-735 AS** |
| | ) | |
| **J.W. HICKS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant J.W. Hicks, Inc.'s ("Defendant" or "Hicks") Motion for Summary Judgment filed on January 30, 2007 (Docket No. 22) and Defendant's March 9, 2007 Motion to Strike materials designated by the Plaintiff in his response to Defendant's Motion for Summary Judgment ("Motion to Strike") (Docket No. 26). The parties have fully briefed the issues, and the Court heard oral arguments on these motions in South Bend, Indiana on March 21, 2007. For the reasons discussed below, the Defendant's Motion to Strike (Docket No. 26) is **DENIED**, and the Defendant's Motion for Summary Judgment (Docket No. 22) is **GRANTED**.

## I. PROCEDURAL HISTORY

On June 23, 2003, Rodger A. Weigel ("Weigel" or "Plaintiff") filed a "Charge of Discrimination" with the Indianapolis Equal Employment Opportunity Commission ("EEOC"), alleging employment discrimination on the basis of his age pursuant to the Age Discrimination in Employment Act ("ADEA"). Plf's Opp. at 2; Complaint, Exb. B.

Specifically, Weigel complained of "employment discrimination in wages by [Hicks]" beginning on or about September 23, 2002 up to and presumably including the date the Charge of Discrimination was filed on June 23, 2005.  Complaint, Exb. B.  On August 15, 2005, Weigel received the EEOC's determination that it was unable to conclude that a violation had been established, and indicated that Weigel had 90 days from receipt of the notice to file suit.  *See* Complaint, Exb. A.  On November 10, 2005, Weigel filed this suit specifying the events that supported his claim for wage discrimination on the basis of age which occurred from the date of his hire on or about September 23, 2002, until the date of his alleged constructive discharge/retaliation which occurred on or about August 17, 2005.  *See* Complaint at 2-6, ¶¶ 1-15.  On December 12, 2005, Hicks filed its Answer (Docket No. 7) to the Complaint, and filed a Rule 12(b)(6) Motion to Dismiss (Docket No. 8), which was denied by this Court on March 24, 2006 (Docket No. 15).  Subsequently, on January 30, 2007, Hicks filed the pending Motion for Summary Judgment (Docket No. 22), and filed its Motion to Strike on March 9, 2007 (Docket No. 26).

## II.  STANDARD OF REVIEW

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In deciding a motion for

summary judgment, a court must view all facts in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Nucor Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The moving party bears the burden of identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" that the moving party believes demonstrate an absence of genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once this burden is met, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). "[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment is proper. In this situation, there can be "'no genuine issue of any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

## III. FACTUAL BACKGROUND

Weigel is currently sixty (60) years of age, with his date of birth being August 1,

1946.  Plf's Opp at 3.  Weigel's employment began with J.W. Hicks, Inc. on September

23, 2002 when Weigel was 56 years of age.  *Id*.  Weigel left his job when he was 58 years

old, on August 17, 2005, which was two (2) days after the EEOC's ruling on August 15,

2005 concluding that it was "unable to conclude that the information obtained established

violations of the statutes."  *Id*.; Complaint at 2.  The circumstances of Weigel's

employment and the facts leading up to Weigel's filing the EEOC Charge of

Discrimination are as follows:

It is undisputed that there is no typical wage increase at J.W. Hicks, Inc., as both

hourly and salaried employee wage increases are approved by the President and sole

share-holder, James Hicks, following submission by a manager or general manager

requesting such wage adjustment.  Hicks' Aff. at ¶¶ 6-8.  The only requests made for

wage increases for Weigel are detailed below, when Weigel received a raise in April of

2003 and in March of 2004.  Hicks' Aff. at ¶¶ 4, 7-8.  James Hicks is also the individual

who determines whether an employee is terminated.  Hicks' Aff. at ¶¶ 7-8.  Further,

employees at the facility are cross-trained so that employees can do the jobs of other

employees, and everyone in the facility is expected to do other jobs when things are slow.

Tuttle Aff. at ¶ 3.

When Weigel was hired on or about September 23, 2002, he was hired to operate

the SACMI and FUKAI press machinery at the "slide gate plant" facility of Hicks which

is located in Knox, Indiana.  Plf's Opp. at 3.  Weigel's starting wage was $9.25 per hour

4

to operate the press machinery, which was the standard entry-level wage at the time; however, he received assurances by Hicks' supervisors that after a 90 day probationary period he would receive a wage increase. *Id.*; Hicks' Aff. at ¶ 4. As admitted by Hicks, Weigel did not receive this initial wage increase until April of 2003 (or approximately 7 months of initial probation). Plf's Opp. at 3; Answer at 3, ¶ 3; Hicks' Aff. at ¶ 5. With this .75 raise, Weigel made $10.00 per hour. *Id.* Weigel claims that this is the first time that Hicks adversely withheld pay. Plf's Opp. at 3.

The second time that Hicks allegedly adversely withheld pay occurred a few months later, in the Summer of 2003. Plf's Opp. at 3. Weigel was assigned increased responsibilities for product packaging at Hicks' slide gate Knox, Indiana plant. *Id.* As admitted by Hicks, Weigel did not receive a pay increase despite the increase of responsibilities. *Id.*; Answer at 4, ¶ 4. Weigel did not receive his expected $1.00 pay increase until March of 2004. Plf's Opp. at 3; Answer at 5, ¶ 6; Hicks' Aff. at ¶ 5.

The third time that Hicks allegedly adversely withheld pay occurred around February of 2004 when Hicks terminated the employment of a co-worker, Mary Ann Krauss, who had performed the laboratory duties at the same Knox, Indiana facility. Plf's Opp. at 4; Answer at 4, ¶ 5. Thereafter, Weigel was given the opportunity to train as a lab technician. *Id.* However, Weigel never received a pay increase for the increased duties and assigned laboratory responsibilities. *Id.* The only other lab technician at the time was Cheryl Milchak, who was responsible for training Weigel. Hicks' Aff. at ¶¶ 9-10. Cheryl

Milchak is younger than Weigel (born on August 2, 1955) but was over 40 years of age when she was hired on August 2, 1996, was on the job longer than Weigel, and had more involved duties than Weigel. Hicks' Aff. at ¶¶ 9-10. Specifically, Cheryl Milchak, who was more productive than Weigel, went from making $8.75 per hour to $10.75 per hour (an increase of 22.8% from January of 1996 to December of 2002); whereas, Weigel went from making $9.25 per hour to $11.00 per hour (an increase of 18.9% in 19 months). Hicks Aff. at ¶ 11. Therefore, Weigel's pay increases, considering the time employed, was greater than Cheryl Milchak, the person who trained him and who was more productive than him. Hicks Aff. at ¶¶ 10-11.

In March 31, 2005, Art Cobbs, Weigel's supervisor, remarked positively about Weigel's performance in Weigel's work performance review. Plf's Opp. at 4; Answer at 6-7, ¶ 9; Cobbs' Aff. at ¶¶ 4-6, Exb. A. Specifically, Art Cobbs noted that Weigel was "very safety conscious," "improved the tracking of test pieces to remove missed batches and duplication of tests," "works with little supervision," his "computer and math skills are good," he "is very organized and thorough, a perfectionist," and he "learned the lab technician tasks." Plf's Opp. at 4; Answer at 6-7, ¶ 9; Cobbs' Aff. at ¶¶ 4-6, Exb. A. The evaluation also noted that Weigel needed "to increase productivity." Plf's Opp. at 4; Answer at 6-7, ¶ 9; Cobbs' Aff. at ¶ 4-6, Exb. A. During the performance review, Art Cobbs informed Weigel that he would not be recommended for a raise unless Weigel increased his productivly. Cobbs' Aff. at 6, Exb. A. Art Cobbs states that although the

6

quality of Weigel's work was good, the quantity was lacking, and that had Weigel's productivity been what he expected it to be, then Cobbs would have recommended a raise.  Cobbs' Aff. at ¶¶ 7-8.

Thereafter, on June 23, 2005, Weigel filed with the EEOC his Charge of Discrimination alleging discrimination in wages based on age.   Plf's Opp. at 2; Complaint, Exb. B.  After Weigel's filing the Charge of Discrimination and up until Weigel's discharge on August 17, 2005, Weigel alleges that the following events took place which also support his retaliation/constructive discharge claim:

Weigel was informed on July 27, 2005 by his supervisor, Art Cobbs, that the EEOC Complaint would be denied, and Weigel was advised of the officers who would be defending Hicks on the claims alleged by Weigel.  Plf's Opp. at 4; Complaint at ¶ 10; Answer at 7, ¶ 10.  Further, Weigel asserts that Hicks' supervisors did not treat younger employees the same when the supervisors increased their monitoring of Weigel and questioned Weigel's work productivity, by standing near Weigel while he performed his lab technician tasks and by assigning him to perform menial tasks which were apart from the regular work duties of the lab technician position. Plf's Opp. at 5; Lindsey Aff. at ¶¶ 3, 6; Answer at 7, ¶ 10.  Further, Weigel was assigned to train two other co-workers, including Rebecca Lindsey, to learn the tasks associated with his lab technician position. Weigel's Aff. at ¶ 7; Lindsey's Aff. at ¶ 3.  In addition, the alleged "key retaliatory event" took place on August, 3, 2005, when Weigel's position as laboratory technician was listed

7

by J.W. Hicks on Hicks' Employment Opportunities sign outside the Knox, Indiana Facility.  Complaint at ¶ 11, Exb. C; Plf's Opp. at 5; Answer at 7, ¶ 11; Hicks' Aff. at ¶ 12.  Weigel felt that this was not only evidence of discrimination, but also a humiliating and degrading event; however, James Hicks asserted that he posted the position because he was concerned that if Weigel terminated his employment with Hicks, he would not have anyone to perform Weigel's duties and he did not want "to be left in the lurch."  Plf's Opp. at 5; Hicks' Aff. at ¶ 12; Lindsey Aff. at  ¶ 4.  Weigel admits that "[g]iven these circumstances, and after reviewing with my attorney the EEOC laws concerning employer retaliation for filing a charge of discrimination, I realized that I must terminate the situation by leaving the employment with [Hicks] on August 17, 2005."  Weigel Aff. at ¶ 8.

There is no dispute that younger employees of Hicks received wage increases that were <u>less</u> than Weigel's wage increase.  Herod Aff. at ¶ 3.  For instance, Linda Herod, who is in charge of Hicks' employee records and information, confirmed that during Weigel's employment with Hicks, Weigel worked at the Knox plant.  Herod Aff. at ¶¶ 2-3.  Linda Herod also specified the Hicks' employees who, at the time of Weigel's employment, were under the age of forty (40) and earned the following pay: (1) Derek Fisher was hired as a laborer in January of 2004 at the pay rate of $8.75/hour, and on August 18, 2005 was making $9.25/hour (5.7% increase in 19 months); (2) Ronald Hutton was hired as a welder (a skilled position as opposed to the general labor category

8

for which Weigel was initially hired) on September 3, 2002 making $10.00/hour, and on

August 18, 2005 was earning $11.50/hour (15% pay increase in 35 months); (3) Mitchell

H. Jones was hired initially as a laborer in January of 1999 at the pay rate of $8.00/hour,

and on August 18, 2005, was making $11.00/hour (37.5% increase in over 6 years); (4)

Brent Katschke was hired in September of 2004 at a rate of $9.25/hour, and on August

18, 2005 was earning $9.25 an hour (no increase in almost 1 year); (5) Adam Kukula was

hired in June of 2004 at a rate of $9.00/hour, and on August 18, 2005 was earning

$10.15/hour (12.7% increase in about 14 months); and, James Risner was hired as a

welder in May of 2005 at a rate of $9.00/hour, and at the time of Mr. Risner's termination

in June of 2005 he did not receive a pay increase.  Herod Aff. at ¶¶ 3(a)-(f).

## IV.  DISCUSSION

### A.  <u>EXHAUSTION OF ADMINISTRATIVE REMEDIES</u>

In order to initiate a civil lawsuit in federal court under the ADEA, a plaintiff must

first timely file an administrative charge with the appropriate federal or state agency and

obtain a Notice of Right to Sue letter.  *See Ajayi v. Aramark Business Services, Inc.,* 336

F.3d 520, 527 (7th Cir. 2003) and *Noreuil v. Peabody Coal Co.,* 96 F.3d 254, 258 (7th

Cir. 1996) (citing 29 U.S.C. § 626(d)); *but see proposed legislation* at 2007 Cong. U.S.

H.R. 2831, 110th Congress, 1st Session (Jun 22, 2007).  Clearly, the allegations contained

in Weigel's "Charge of Discrimination" (regarding age discrimination in wages) which

was filed on June 23, 2005, could not have, and did not, contain specific allegations

regarding the alleged retaliation or constructive discharge which occurred on or about August 17, 2005, *after* the "Charge of Discrimination" was filed.[1]

However, neither party has questioned whether Weigel's claims were included in his EEOC charge or if Weigel has properly exhausted his administrative remedies prior to filing suit in federal court.  Furthermore, the failure to exhaust administrative remedies is an affirmative defense that must be proved by the defendant, and not a jurisdictional issue.  *See Daugherty v. Traylor Brothers, Inc*., 970 F.2d 348, 352-53 (7th Cir. 1992) (holding that the employer should not have been permitted to amend its answer to add affirmative defenses regarding an employee's failure to exhaust his administrative remedies); *Walsh v. Mellas*, 837 F.2d 789, 799-800 (7th Cir. 1988), *cert. denied* (holding that as with other affirmative defenses, the defendant beared the burden of proof in proving qualified immunity).  Any such defense regarding the exhaustion of

---

[1] Under the "scope of the charge" doctrine, ADEA claims in such a civil action are cognizable only if they are like or reasonably related to the allegations of the charge and growing out of such allegations. *See Ajayi v. Aramark Business Services, Inc.,* 336 F.3d 520, 527 (7th Cir. 2003); *Sauzek v. Exxon Coal USA, Inc.,* 202 F.3d 913, 920 (7th Cir. 2000); *Noreuil v. Peabody Coal Co.,* 96 F.3d 254, 258 (7th Cir. 1996) (discussing that in general the Seventh Circuit has held that retaliation and age discrimination claims are sufficiently dissimilar that an administrative charge of one fails to support a subsequent civil suit for the other).  *See also National Railroad Passenger Corp.*, 536 U.S. 101 (2002) (discussing what constitutes an "unlawful employment practice" and when has that practice "occurred" for the purposes of properly filing a charge with the EEOC for actions under Title VII); *McKenzie v. Illinois Dept. Of Transp*., 92 F.3d 473, 481 (7th Cir. 1996) (holding that alleged incidents of retaliation that occurred prior to the employee's filing the EEOC complaint could not serve as the basis for a Title VII claim, where she failed to allege retaliation in the EEOC complaint).  The rule is meant both to give the EEOC and employer an opportunity to settle the dispute and to give the employer fair notice of the conduct about which the employee is complaining. *Sauzek,* 202 F.3d at 920; *Noreuil,* 96 F.3d at 258.

administrative remedies has been waived here, where the defense was not raised in Hicks'

Answer to the Complaint filed on December 12, 2005, it was not raised in Hicks' Motion

to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) also filed on December 12, 2005, nor was

it raised in Hicks' present pending motion for summary judgment. *See Walsh*, 837 F.2d at

799-800 (holding that the defendants abandoned the defense of qualified immunity where

it was not properly and timely presented before the district court despite their having had

numerous opportunities to bring the argument to the court's attention). This Court may

properly depend upon counsel to apprise it of the issues for decision, and is not obligated

to conduct a search for issues which may lurk in the pleadings. *Id.* at 800. Therefore, the

Court now turns to the substantive issues presented by Defendant's Motion to Strike and

Motion for Summary Judgment.

**B.     MOTION TO STRIKE ANALYSIS**

  Before the merits of Defendant's Motion for Summary Judgment can be addressed,

it is necessary to rule on Defendant's Motion to Strike (Docket No. 26). Hicks seeks to

strike the Affidavit of Rebecca S. Lindsey (Docket No. 25).

  Defendant's Motion to Strike was filed on March 9, 2007. The Plaintiff did not

respond, except during oral argument, wherein Plaintiff requested to amend the Plaintiff's

Disclosures made pursuant to Fed. R. Civ. P. 26. This was in response to Defendant's

position that the Affidavit of Rebecca Lindsey should be stricken as Ms. Lindsey was not

listed as one of the Plaintiff's witnesses disclosed pursuant to Rule 26. Defendant Hicks

11

argues that the Plaintiff should not be allowed to disrespect the process of pretrial disclosures by using a witness that the Defendant never anticipated during the period allowed for discovery. Def's Motion to Strike at 1. In the alternative, Defendant argues that the particular portions of the Affidavit should be stricken because the identified paragraphs are either impermissible conclusions by the witness, the witness is not competent to testify to the matter, or the conclusions are not relevant. Def's Motion to Strike at 2.

A motion to strike is altogether appropriate because district courts may only consider properly designated evidence that would be admissible at trial when ruling on a motion for summary judgment. Fed. R. Civ. P. 56(e); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921 n.2 (7th Cir. 1994). However, because Rebecca Lindsey was employed by J.W. Hicks during the relevant period, and because she personally recalls events occurring from mid-July through mid-August as she either worked next to Plaintiff Weigel or sometimes with him, Rebecca Lindsey is entitled to testify to those events. Further, as Rebecca Lindsey was being trained by Weigel regarding the lab technician duties, it is fair to say that she is personally familiar with the same and is competent to render her opinion as to what those duties did and did not include. Lastly, this Court cannot say that Rebecca Lindsey's opinions, feelings, or beliefs as to what she would have done, are completely irrelevant or that she is not competent to testify to such matters. *See* Fed. R. Civ. Pro. 402 and 601. Although the Court does not condone a

12

litigant's failure to make the proper disclosures pursuant to Fed. R. Civ. P. 26, such strategy will not cause any harm to the Defendant in this instance.   Therefore, the Defendant's Motion to Strike the Affidavit of Rebecca S. Lindsey (Docket No. 26) is **DENIED**.

**C.**    **MOTION FOR SUMMARY JUDGMENT ANALYSIS**

   **1.**    **Discrimination in wages**

   The ADEA prohibits retaliation against an employer from discharging an individual because of his age.  *See* 29 U.S.C. § 623(a)(1).  "To establish a claim under the ADEA, a plaintiff-employee must show that 'the protected trait (under the ADEA, age) actually motivated the employer's decision'-that is, the employee's protected trait must have 'actually played a role in [the employer's decision-making] process and had a determinative influence on the outcome.' " *Hemsworth v. Quotesmith.Com, Inc.,* 476 F.3d 487, 490 (7th Cir. 2007) (citations omitted).  Weigel can attempt to demonstrate his discrimination claims through either the direct or indirect methods of proof. *Id.*  (other citations omitted).

   **a)**    **Direct Method**

   Direct proof of discrimination is not limited to near-admissions by the employer that its decisions were based on a proscribed criterion, but also includes circumstantial evidence which suggests discrimination albeit through a longer chain of inferences. *Hemsworth v. Quotesmith.Com, Inc.,* 476 F.3d 487, 490 (7th Cir. 2007) (citations

omitted). *But see*, *Sanghvi v. St. Catherine's Hosp., Inc.*, 258 F.3d 570, 574 (7th Cir. 2001), *cert. denied*. (direct evidence can also be shown by "remarks and other evidence that reflect a propensity by the decision-maker to evaluate employees based on illegal criteria. . ."); *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 659 (7th Cir. 2001), *cert. denied* (citations omitted) (direct evidence is evidence that can be interpreted as an acknowledgment of discriminatory intent by the defendant or its agents); *Radue v. Kimberly-Clark Corp.* 219 F.3d 612, 616 (7th Cir. 2000) (citations omitted) (direct evidence essentially requires an admission by the decision-maker that his actions were based on the prohibited animus).

Defendant Hicks argues that Plaintiff Weigel has presented no direct evidence of discrimination, therefore Plaintiff must rely on the indirect method under *McDonnel-Douglas*.[2]  Def's Memo in Support at 5.

Plaintiff Weigel does not suggest that he has set forth direct evidence of discrimination, yet he argues that he has established a *prima facie* case of employment discrimination of the basis of age under the indirect approach.  Plf's Opp. at 8, 10-12.

Weigel has tacitly conceded, and even if not, this Court finds, that Weigel has not presented direct evidence that Hicks discriminated against him because of age.  There is no such evidence of an admission from Hicks that its treatment of Weigel was because of his age, nor is there circumstantial evidence demonstrating intentional discrimination.

---

[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Therefore, the Court analyzes Weigel's claim of discrimination pursuant to the indirect method.

       **b)**      **Indirect Method**

Under the *McDonnell Douglas* indirect burden-shifting formula, in order to establish a *prima facie* case of age discrimination, a plaintiff must prove that he was: (1) a member of a protected class; (2) reasonably performed his job to his employer's expectations; (3) he was subject to a materially adverse employment action; and (4) other similarly situated employees who were substantially younger than him were treated more favorably. *See Bennington*, 275 F.3d at 659; *Radue*, 219 F.3d at 617. Once the *prima facie* case has been established, the burden of production then shifts to the defendant to show legitimate, nondiscriminatory reasons for its actions. *Hemsworth*, 476 F.3d at 492. Finally, the burden shifts back to the plaintiff to attempt to show that the defendant's stated reasons are pretextual. *Id.*

Under *McDonnel-Douglas*, Hicks argues that Weigel has failed to make out a *prima facie* case of discrimination, and therefore there is nothing for Hicks to rebut. Def's Memo in Support at 6. Further, Hicks argues even if a *prima facie* case was produced, Hicks has demonstrated through its own evidence the lack of any discriminatory intent where the job evaluation done by Art Cobbs' shows that Weigel was critiqued for lack of productivity, and that his raises were commensurate with the other employee in the laboratory, and that even the raises of employees not in the protected

class were actually less than Weigel's raises.  *Id.*   Hicks also states that under the business judgment rule, Hicks has the right in making business decisions to accord greater weight to some categories in an evaluation, such as productively, than others.  *See* Def's Reply at 3-4.

Plaintiff Weigel argues that he has met the standard set forth in *McDonnel Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Plf's Opp. at 10.  Weigel argues that he: (1) belongs to a protected group [over age 40]; (2) was performing to Hicks' legitimate expectations [receiving high marks in his evaluation]; (3) was subjected to adverse employment action [Weigel was not given raises on a timely basis, Weigel was given additional job duties, Art Cobbs and Chad Tuttle hovered over Weigel's work after he filed the EEOC charge, Hicks informed Weigel that his EEOC charge would be denied and defended, and Hicks posted Weigel's lab technician position as an open employment opportunity]; and, (4) similarly situated employees who were outside his classification (younger) received more favorable treatment [Hicks monitored Weigel closely, gave Weigel additional job duties, and refused to provide a salary comparable to what younger employee's made].  Plf's Opp. at 10-12.  Further, Weigel argues that Defendant Hicks is unable to articulate a legitimate non-discriminatory reason for the his discharge.  *Id.* Weigel argues that Defendant's contention that Weigel needed to increase productively is contradicted by Art Cobbs' positive statements in the written evaluation, and having the position posted early 'to not be in a bind if Weigel quit' are evidence of pretextual

motivations.  Plf's Opp. at 12.

In the present case, it is undisputed that Weigel is a member of the protected class, over the age of 40; however, some discussion is required to determine whether Weigel can establish the last three elements of the *prima facie* case, realizing that all facts are viewed in the light most favorable to Weigel.

**Meeting Legitimate Expectations**

On March 31, 2005, long before any Charge of Discrimination was filed, Art Cobbs, Weigel's supervisor, remarked on the written evaluation that Weigel needed "to increase productivity."  Further, it is undisputed that Art Cobbs informed Weigel that he would not be recommended for a raise unless Weigel increased his productively, and that although the quality of Weigel's work was good, the quantity was lacking.  However, with the exception of Weigel's needing to increase his productively, his performance evaluation was largely positive.  Therefore, the Court must conclude that based on this record, material issues of fact certainly remain with respect to whether Weigel was meeting his employer's expectations.  *See Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 692 (7th Cir. 2006), *cert. denied*, *see also Darnell v. Target Stores*, 16 F.3d 174, 177 (7th Cir. 1994), *r'hrng. denied* (reasoning that the plaintiff was not fired, which indicates that he was at least minimally meeting his employer's expectations, and his last review prior to resigning rated his job performance as satisfactory).  Because the overall positive remarks made by Art Cobb concerning Weigel's performance create an the inference

suggesting that Weigel satisfactorily performed his job, it would be improper to grant summary judgement to Hicks on this prong.

**Adverse Employment Action**

At this stage of the analysis, Weigel fails to clearly specify the actions that he claims are adverse employment actions.  Therefore, instead of only considering the allegation that Weigel was not given raises on a timely basis, the Court also considers whether hovering over Weigel's work, whether having Weigel do additional duties, whether informing Weigel that his EEOC charge would be denied and defended, or whether posting Weigel's lab technician position as an open employment opportunity are considered adverse employment actions.

When discussing an adverse employment action, it is essential to distinguish between material differences and the many day-to-day travails and disappointments that, although frustrating, are not so central to the employment relation that they amount to discriminatory terms or conditions.  *Minor v. Centocor, Inc.*, 457 F.3d 632, 634 (7th Cir. 2006) (citations omitted).  "Helpful though a judicial gloss such as 'adverse employment action' may be, that phrase must not be confused with the statute itself or allowed to displace the Supreme Court's approach, which inquires whether the difference is material."  *Id.*

Even viewing the facts most favorable to Weigel, this Court cannot say that Weigel was subjected to an adverse material action when his supervisors closely

monitored his work, informed him that his EEOC charge would be denied and defended, or posted the lab technician position as an open employment opportunity. *See Crady v. Liberty National Bank and Trust Company of Indiana*, 993 F.2d 132, 135-36 (7th Cir. 1993) (citations omitted) (holding that public humiliation is not sufficient to establish age discrimination and constructive discharge because public perceptions are not a term or condition of the plaintiff's employment; also, finding that a materially adverse change might be indicated by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation).  Assuming that these allegations are true, these events described by Weigel simply do not create material differences in the terms and conditions of his employment, nor are they remotely discriminatory actions. *See Haugerud v. Amery School Dist.*, 259 F.3d 678, 691-92 (7th Cir.2001) (holding, in a sex discrimination suit under Title VII, that while many of the instances [including trying to force plaintiff to give up her custodian position, telling male custodians not to help female custodians, giving plaintiff additional responsibilities above what was expected of the male custodians and above what plaintiff should have reasonably been given, and intentionally interfering with the performance of her work duties] may have been harassing, none of them resulted in any materially adverse change in the terms, conditions, or privileges of the plaintiff's employment).  Further, although extra work can be considered a material difference in the terms and conditions of employment, *see Minor*

*v. Centocor, Inc.*, 457 F.3d 632, 634 (7th Cir. 2006), here the record shows that Hicks

apparently assigned Weigel to perform menial tasks which were in addition to the regular

work duties of the lab technician position.  However, Plaintiff gives absolutely no detail

as to "what" those tasks were, and plaintiff's failure to affirmatively demonstrate with

specific factual allegations that the tasks constituted a material difference in Weigel's

work cannot prohibit summary judgment on this prong.  Furthermore, this is not a case

where Weigel was given fewer responsibilities, or was given fewer opportunity for

promotion or raise increases; but instead, Weigel held the same laboratory duties as he

had since February of 2004.  *See Cigan v. Chippewa Falls School Dist.*, 388 F.3d 331,

333 (7th Cir. 2004); *McCabe v. Sharrett*, 12 F.3d 1558, 1564 (11th Cir. 1994). Lastly, it is

undisputed that employees of Hicks were cross-trained so that employees can do the jobs

of other employees, and Weigel has not demonstrated that any additional duties that Hicks

required him to perform constituted a material adverse employment action.

On the other hand, the denial of a raise- as opposed to missing out on something

more transient, like a bonus- qualifies as an adverse employment action.  *Barricks v. Eli*

*Lilly and Co.,* 481 F.3d 556, 559, (7th Cir. 2007) (citations omitted); *see also*, *Hunt v.*

*City of Markham, Illinois*, 219 F.3d 649, 654 (7th Cir. 2000) (raises are the norm for

workers who perform satisfactorily, the denial of which is more likely to reflect invidious

motivation than the denial of a bonus, after alternative explanations based on the worker's

performance or the employer's financial situation are excluded).  Although this Court

recognizes that there is no typical wage increase at J.W. Hicks, Inc., it is still undisputed that Weigel did not receive timely raises on two occasions, once after his probationary period and again in the Summer of 2003, and it is undisputed that Weigel never received a pay increase for the increased duties and assigned laboratory responsibilities in February of 2004.  Therefore, Weigel has raised a genuine issue as to whether he suffered an adverse employment action when Weigel received untimely raises, and Weigel has satisfied this prong of the *prima facie* case with regard to his raises.

**Similarly Situated Employee**

In determining whether two employees are similarly situation a court must look at all relevant factors, the number of which depends on the context of the case.  *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000).  Further, different employment decisions, concerning different employees, made by different supervisors, are seldom sufficiently comparable to establish a *prima facie* case of discrimination for the simple reason that different supervisors may exercise their discretion differently.  *Id.* at 618.

The record is clearly void of any evidence that other younger and similarly situated employees were treated more favorably than the Weigel.  In fact, Defendant has failed to specifically direct this Court's attention to any similarly situated employee by failing to offer an employee's age, position, pay, and/or circumstances which could allow this Court to consider whether another younger employer was treated more favorably than Weigel. Weigel has solely made blanket assertions that Hicks' supervisors did not treat younger

21

employees the same.  Yet, there is no indication as to "who" these younger employees supposedly are.  Furthermore, Defendant Hicks has offered undisputed evidence showing that Weigel is unable to meet this prong of the *prima facie* case.  In particular, the only other lab technician at the time was Cheryl Milchak, who was responsible for training Weigel.  Cheryl Milchak, although younger than Weigel, was over 40 years of age when she was hired, had been on the job longer than Weigel, and had more involved duties than Weigel.  More importantly, Weigel's pay increases, considering the time employed, was greater than the pay increases that Cheryl Milchak received.  Furthermore, not only were Weigel's raises commensurate with Cheryl Milchak's, but the raises of other employees not in the protected class were actually less than Weigel's raises.  Clearly, Weigel has failed to show that he was sufficiently similar to other younger employees who were treated more favorably than he, and Weigel has failed to establish a *prima facie* case.[3]

## 2.      **Constructive Discharge**

Defendant argues that Plaintiff Weigel was not discharged, but that Weigel quit his job because Hicks informed Weigel that the EEOC Complaint would be denied and

---

[3] Because the *prima facie* case has not been established, the Court need not consider whether the defendant has shown legitimate, nondiscriminatory reasons for its actions, or whether the plaintiff has shown that such reasons are pretextual.  However, assuming the *prima facie* case had been established, this Court is convinced that Weigel has also failed to show that Hicks' stated reasons are pretextual.  Specifically, Hicks has demonstrated the lack of any discriminatory intent where the job evaluation done by Art Cobbs' shows that Weigel was critiqued for lack of productivity, where Weigel's raises were commensurate with the other employee in the laboratory, and where the raises of younger employees were actually less than Weigel's raises.

advised him of the officers who would be defending Hicks on the claims alleged by

Weigel.  Def's Memo in Support at 3.  Further, although Hicks posted a sign seeking

employment applications for the position which Weigel occupied, Hicks argues that this

is not severe enough to justify Weigel's quitting.  Def's Memo in Support at 3.

Defendant further argues that any kind of criticism of Weigel's work performance is not

justification.  *Id.* (citing *Markel v. Bd. of Regents of the Univ. Of Wis. Sys.*, 276 F.3d 906

(7th Cir. 2002) (listing various examples regarding the fact that not everything that makes

and employee unhappy is actionable adverse action)).  Further, Hicks argues that its

actions cannot meet the definition of  "discrimination" as defined by the Seventh Circuit

in *Washington v. Illinois Dept. Of Rev.*, 420 F.3d 658 (7th Cir. 2005), following *Penn.*

*State Police v. Suders*, 542 U.S. 129 (2004).  Def's Memo in Support at 4-5.  Specifically,

Defendant argues that "it is absurd to allege that it is an adverse employment action to

have informed Plaintiff that his claim would be defended against (surely he assumed that

much) or to advertise the lab technician job on a sign outside the plant facility."  Def's

Memo in Support at 5.

On the other hand, relying on sections cited from *Employment Discrimination*,

Second Edition, Volumes 1 and 2 (Larson 2005), Plaintiff Weigel argues that there are

genuine issues of material fact as to the existence of retaliatory motivations on the part of

Hicks, thereby leading to the reasonable likelihood of constructive discharge.  Plf's Opp.

at 13. Weigel specifically argues that Hicks "consistently refused to promote the plaintiff

(Weigel), to provide him opportunities to gain skills and experience necessary for promotion, to pay him a salary comparable to what younger male employees were paid for substantially identical work, to give him credit in front of clients for the work he had done and so on." Plf's Opp. at 15 (citing *E.E.O.C. v. Hay Associates*, 545 F.Supp. 1064 (D.C.Pa. 1982). Further, Plaintiff Weigel asserts that the public announcement of the open lab technician position, which was made 41 days after Weigel's EEOC filing, support Weigel's contentions that Hicks retaliated to thwart a statutorily protected right to file a formal EEOC charge of age discrimination. Plf's Opp. at 16-17. Lastly, Weigel states that other facts supporting his constructive discharge are that Hicks informed Weigel that his EEOC charge would be denied and defended and Hicks began questioning Weigel's work productivity. *Id.*

A constructive discharge occurs when an employer prompts a resignation by subjecting the employee to working conditions that a reasonable person would find unbearable. *Griffin v. Potter,* 356 F.3d 824, 830 (7th Cir. 2004) (*citing Herrnreiter v. Chi. Hous. Auth.,* 315 F.3d 742, 744-45 (7th Cir. 2002), *cert. denied*; *EEOC v. Univ. of Chi. Hosps.,* 276 F.3d 326, 331 (7th Cir. 2002)); *see also, Jordan v. City of Gary, Ind.,* 396 F.3d 825, 836 (7th Cir. 2005) (citations omitted) (holding that constructive discharge occurs when an employee is so mistreated at work that a "reasonable person in that employee's position would be forced to quit."); *Lindale v. Tokkeim Corp*., 145 F.3d 953, 955 (7th Cir 1988) (quoting in *McPherson v. City of Waukegan*, 379 F.3d 430, 440 (7th

Cir. 2004) (holding that a constructive discharge occurs where an employee resigns because the hostile work environment has created working conditions that have made remaining with the employee "simply intolerable").  The Seventh Circuit has held that the working conditions must be more than merely intolerable, they must be intolerable in a discriminatory way.  *Rabinovitz v. Pena*, 89 F.3d 482, 489 (7th Cir. 1996) (citations omitted).  Further, an employee may not be unreasonably sensitive to his working environment and he must seek redress while remaining in his job unless confronted with an aggravating situation beyond ordinary discrimination.  *Id.* (other citations omitted); *see also Wolf v. Northwest Indiana Symphony Society*, 250 F.3d 1136, 1142-43 (7th Cir. 2001), *cert. denied* (holding that failing to object to egregious conditions, or to seek some form of redress is compelling evidence that the employee, or any reasonable worker, would not find the conditions intolerable); *but see Lindale v. Tokheim Corp.*, 145 F.3d 953, 955 (7th Cir. 1998) (holding that the court cannot take literally that before an employee quits he must seek legal redress for the condition that drove him to quit).

In *Rabinovitz*, the plaintiff/employee alleged that he was subjected to constant mean, humiliating insults, where he received a lowered performance rating, he received workplace restrictions, the employer refused his request to start work early, the employee's business trip coincided with the arrival of the EEOC investigator, and the employee was told that he could quit if he was not happy with the job.  *Rabinovitz*, 89 F.3d at 489.  The Court of Appeals determined that these incidents suggested that friction

25

existed between the employee and his supervisors, not that his job was so intolerable that he was forced to resign. *Id.*

So too, is the situation here. First of all, Weigel never complained of his alleged adverse conditions, except for inquiring of his supervisors and filing his EEOC complaint solely in relation to his untimely raises. More importantly, Weigel has only showed that he was required to perform unspecified unpleasant tasks on top of the ordinary demands of the job. This is not intolerable. Further, although Weigel was not given raises on a timely basis, Weigel's raises were commensurate with the one other employee in the laboratory, and, the raises of younger employees were actually less than Weigel's raises. Further, Weigel was informed that he needed to increase his productivity before receiving his next raise. Also, the fact that Hicks informed Weigel that the EEOC charge would be denied and defended, should have been an action assumed by Weigel, and in any event, is hardly a condition that a reasonable person would find unbearable. Lastly, supervisors hovering over Weigel's work and Hicks posting the lab technician position as an open employment opportunity, although possibly unpleasant experiences, does not constitute a situation where a reasonable person in Weigel's position would be forced to quit. Further, there is no evidence that any of Hicks' actions were based on a discriminatory motive. In all, the incidents alleged by Weigel, may suggest that friction existed between Weigel and Hicks; however, they do not establish that his job was so intolerable that he was forced to resign.

### 3.    <u>Retaliation</u>

Although Weigel's underlying discrimination claim based on the ADEA has failed, he still may pursue a claim that he was retaliated against for complaint about age discrimination.  *See Horwitz v. Board of Edu. Of Avoca School Dist. No. 37*, 260 F.3d 602, 612 (7th Cir. 2001) (citations omitted).  The ADEA prohibits retaliation against an employee for having filed a charge of discrimination.  *See* 29 U.S.C. § 623(d).  As with other employment-related claims (discrimination for instance), a plaintiff may proceed with a claim of retaliation pursuant to either the direct or indirect method. *Isbell v. Allstate Ins. Co.,* 418 F.3d 788, 793 (7th Cir. 2005), *cert. denied* (citing *Luckie v. Ameritech Corp.,* 389 F.3d 708, 714 (7th Cir. 2004); *see also, Kodl v. Board of Educ. School Dist. 45, Villa Park*, 2007 WL 1583989 (7th Cir., June 4, 2007).

Again, the basis for Weigel's retaliation claim is similar to his constructive discharge claim where Weigel argues that Hicks consistently refused to promote Weigel, refused to provide him opportunities to gain skills and experience necessary for promotion, refused to pay him a salary comparable to what younger male employees were paid for substantially identical work, and refused to give him credit in front of clients for the work he had done.  Further, Plaintiff Weigel asserts that the public announcement of the open lab technician position, which was made 41 days after Weigel's EEOC filing, which supports his contention that Hicks retaliated.  And, the other fact supporting retaliation was that Hicks informed Weigel that his EEOC charge would be denied and

defended and Hicks began questioning Weigel's work productivity.

Initially, this Court discounts any allegation that Hicks acted in a retaliatory fashion when it allegedly began questioning Weigel's work productivity, refused to promote Weigel, refused to provide him opportunities to gain skills and experience necessary for promotion, refused to pay him a salary comparable to what younger employees were paid for substantially identical work, or refused to give him credit for the work he had done.  The record is not only void of any support for these allegations, but the record clearly contradicts the same – where Weigel received the opportunity to become a lab technician and train other employees, received raises that were higher than other employees (including the other lab technician with more experience), and Weigel received positive feedback in his evaluation.  Further, Weigel's productively was noted by Hicks as a concern back in March of 2005, before Weigel ever filed his Charge of Discrimination in June of 2005.  Therefore, the Court considers whether publically announcing the open lab technician position, 41 days after Weigel's EEOC filing, and whether informing Weigel that his EEOC charge would be denied and defended, create a triable claim for retaliation.

**a)      Direct Method**

Under the direct method, a plaintiff must show: (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action taken by the employer; and (3) a casual connection between the two.  *Kodl v. Board of Educ. School Dist. 45,*

28

*Villa Park*, 2007 WL 1583989 (7th Cir., June 4, 2007) (citing *Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 903 (7th Cir. 2005)).

As mentioned, Weigel clearly engaged in protected expression by filing the EEOC complaint.  Thus only the last two elements of the *prima facie* case are at issue.  As with the claim for discrimination, Weigel's retaliation claim requires him to establish that he suffered a materially adverse employment action, an action which must be more disruptive than a mere inconvenience or an alteration of job responsibilities.  *Rabinovitz v. Pena*, 89 F.3d 482, 488 (7th Cir. 1996); *but see Burlington Northern and Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405 (2006) (holding that under Title VII a plaintiff need not show that he suffered an adverse employment action, but instead may show that his employer's action would have been materially adverse to a reasonable employee, such that, it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination).  None of the actions alleged by Weigel amount to a material change, nor would they have appeared materially adverse to a reasonable employee.  This Court has already determined as a matter of law that Weigel was not constructively discharged, nor has he shown such changes like a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to the particular situation.  *Id.*  Further, none of Hicks' actions would have dissuaded a reasonable worker from making or supporting a charge of discrimination.  Because this Court holds that

Weigel failed to meet the second element of the *prima facie* test, it need not reach the

third element - the causal link - save the following comments.  Had Weigel established an

adverse action here, Weigel is nonetheless unable to show as a matter of law that a causal

link exists.  Weigel's claim that Hicks' posting the open laboratory technician position

just 41 days after his EEOC filing, constitutes evidence of retaliation, simply is not

enough where temporal proximity is "rarely sufficient in and of itself to create a triable

issue."  *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002),

*cert. denied*.[4]  Moreover, more than 1 month does not seem to be the appropriate amount

of time to consider as evidence of retaliation.  Further, telling Weigel that his EEOC

charge would be defended and denied cannot possibly suggest that Hicks was retaliating

for Weigel's having filed a charge of discrimination.  In fact, Weigel should have

expected his employer to deny and defend the charge in some fashion.  Therefore,

because Weigel does not offer any direct evidence that as a result of filing the charge of

discrimination he suffered from the actions of which he complains, he must rely on the

indirect method.

**b)     Indirect Method**

To establish a claim of retaliation claim under the indirect method, a plaintiff must

demonstrate that: (1) he engaged in statutorily protected activity; (2) he was performing

---

[4] In *Culver*, for example, the Seventh Circuit found a 72-hour period between protected
activity and an adverse action insufficient to *alone* establish causation.  *Culver v. Gorman & Co.*,
416 F.3d 540, 546 (7th Cir. 2005).

his job according to his employer's legitimate expectations; (3) he suffered an adverse employment action; and 4) he was treated less favorably than similarly situated employees who did not engage in such protected activity. *Kodl v. Board of Educ. School Dist. 45, Villa Park*, 2007 WL 1583989 (7th Cir., June 4, 2007) (citing *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006)); *but see Burlington Northern and Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405 (2006). If a plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for his actions. *Tomanovich,* 457 F.3d at 663. Once such a reason is articulated, the burden returns to the plaintiff to show that the employer's proffered reasons for the adverse employment action are merely pretext. *Id.*

As previously specified, Weigel has simply failed to meet the *prima facie* test where it is undisputed that he has not suffered an adverse employment action nor has he shown that his employer's action would have been materially adverse to a reasonable employee. Further, Weigel has failed to even discuss or identify similarly situated employees who were treated more favorably and who did not engage in protected activity. Even if Weigel could meet the *prima facie* case, Hicks' has shown that its actions were legitimate business decisions, by wanting to be sure that it was not left without a laboratory technician, should Weigel left his employment with Hicks. *See Alexander v. Wisconsin Dept. Of Health and Family Services*, 263 F.3d 673, 682-83 (7th Cir. 2001). Weigel has failed to present any evidence that this proffered reason was pretextual. *Id.*

31

Because the Plaintiff has failed to show retaliation under the direct or indirect method, summary judgment on this claim is, therefore, appropriate.

## V.  CONCLUSION

Based on the foregoing analysis, Defendant's March 9, 2007 Motion to Strike materials designated by the Plaintiff in his response to Defendant's Motion for Summary Judgment (Docket No. 26) is **DENIED**.  However, because there is no genuine issue as to any material fact regarding Plaintiff Rodger Weigel's inability to establish claims for employment discrimination, constructive discharge, and retaliation, the Defendant, J.W. Hicks Inc., is entitled to judgment as a matter of law on all claims.  As such, Defendant J.W. Hicks, Inc.'s Motion for Summary Judgment filed on January 30, 2007 (Docket No. 22) is **GRANTED.**  It is further ordered that the Clerk of this Court shall enter this case **dismissed with prejudice**.

**IT IS SO ORDERED**.

**DATED: July 18, 2007**

S/ ALLEN SHARP
**ALLEN SHARP, JUDGE**
**UNITED STATES DISTRICT COURT**

32